Emma Sophia Hilpire, Appellant, v. Catherine Claude and Julian Claude.

**Adoption:** REVOCATION OF WILL BY. Under Code 1873, section 2307, conferring on an adopted child all the rights, privileges, and

109　159
112　723
109　159
120　19
109　159
135　470
j135　478
109　159
137　252
109　159
139　227

responsibilities which would pertain to the child if born to the person adopting it in lawful wedlock; and section 2310, providing that the rights, duties, and relations between the parent and child by adoption shall in all respects, including the right of inheritance, be the same that exist by law between parent and child by lawful birth—the adoption of a child by a testator operates as a revocation of a previously executed will.

**Articles of Adoption:** ACKNOWLEDGMENT: *Deputy clerk of district court.* Under Code 1873, section 277, authorizing certain officers among whom are included deputy clerks of the district courts, to administer oaths and take and certify acknowledgements of instruments in writing, the acknowledgement by a deputy clerk of a district court of an instrument adopting a child, executed under section 2309, requiring such instruments to be signed by the person adopting, and to be acknowledged in the same manner as deeds affecting real estate, is valid.

INDEXING BY RECORDER. Under Code 1873, section 2310, providing that upon the execution, acknowledgement, and filing for record of an instrument of adoption, the rights, duties, and relations between the parents and child attach; and section 2309, providing that such an instrument shall be recorded in the recorder's office in the county where the person adopting resides, and shall be indexed, with the name of the parent by adoption as grantor, and the child as grantee,—the omission of the recorder to index the parties as grantor and grantee will not render the instrument invalid.

*Appeal from Wright District Court.*—HON. S. M. WEAVER, Judge.

SATURDAY, OCTOBER 7, 1899.

ACTION in equity for a partition of certain real estate Decree was rendered dismissing the plaintiff's petition, from which she appeals.—*Reversed.*

*Ladd & Rodgers* for appellant.

*C. M. Nagle* for appellees.

GIVEN, J.—I. On the 4th day of October, 1884, Henry G. Bernard and his wife, the defendant Catherine Claude, duly executed a joint will, in which they devised to each other all property which either might own at the time of his

or her decease. On the 23d day of February, 1893, Henry G. Bernard died intestate, seised in fee simple of the land in question, and leaving his wife surviving him, who since intermarried with her co-defendant, Julian Claude. Said will was duly admitted to probate. Henry G. and Catherine Bernard had no children born to them. In the year 1880 the plaintiff, then aged seven years, and known as Emma Sophia Hazelman, went to live with Mr. and Mrs. Bernard, and continued to live with them until Mr. Bernard's death, and thereafter with Mrs. Bernard until she (Emma Sophia) was twenty-one years of age, about which time she married. On March 6, 1889, articles of adoption as follows were executed, which were filed for record March 24, 1889. "Articles of Adoption. This article of agreement, made and entered into by and between the undersigned, the contracting parties hereto, witnesseth: (1) That August Hazelman, the only living parent lawfully having the care and providing for the wants of the child herinafter named, and all of the county of Lasalle and state of Illinois, desire to give and consent thereto, and by these presents do give and consent to give unto Henry G. Bernard and Catherine Bernard, of Woolstock township, in the county of Wright and state of Iowa, my child, now being called and known by the name of Emma Sophia Hazelman, and of sixteen years of age, for the purpose of adoption as their own child. (2) That the parties hereto desire, consent, and agree that hereafter said child shall be called and known by the name of Emma Sophia Bernard. (3) That in consideration of the gift of said child for the purposes hereinbefore named, we, the said Henry G. Bernard and Catherine Bernard, do by these presents adopt and confer upon said child all the rights, privileges, and responsibilities which would pertain to the child if born to us in lawful wedlock. Signed this 6th day of March, A. D. 1889. Henry G. Bernard, Catherine Bernard. August Hazelman,"

II.   This instrument was executed under the provisions of chapter 7, title 15, of the Code of 1873, section 2309 of which requires that, "such instruments in writing shall be also signed by the person adopting, and shall be acknowledged in the same manner as deeds affecting real estate are required to be acknowledged." This instrument was acknowledged on March 6, 1889, by Mr. and Mrs. Bernard, before "Ed Hartsock, Deputy Clerk of the District Court" of Wright county. Appellees insist that under the statutes then in force said deputy clerk had no authority to take said acknowledgment, and that the instrument is therefore of no effect. Section 1955 of said Code, as it then stood, provided that instruments in writing by which real estate shall be conveyed or incumbered, "if acknowledged within this state, must be so before some court having a seal, or some judge or clerk thereof, or some justice of the peace or notary public." This section was amended by chapter 99, Acts 22d General Assembly, adding the words "or before the county auditor or his deputy," which amendment was approved April 9, 1888. Section 277 of said Code, as it then stood, provided that: "The following officers are authorized to administer oaths, and take and certify the acknowledgment of instruments in writing: Each judge of the district court; each judge of the circuit court; the clerk of the supreme court; each clerk of the district court as such, or as clerk of the circuit court; each deputy clerk of the district and circuit courts; each county auditor; each deputy county auditor," etc. This section was amended by chapter 126, Acts Twenty-first General Assembly, by inserting "the deputy clerk of the supreme court." It will be observed that deputy clerks of courts are not included in section 1955; that county auditors and their deputies were not included therein until the amendment of April 9, 1888; and that both deputy clerks of the district and circuit courts and auditors and their deputies are included in section 277. In *Long v. Schee*, 86 Iowa, 619, it was contended that section 1955

absolutely requires acknowledgment of deeds of real estate bo made before some court having a seal, or one of the officers named therein. This court said, "It appears to us that this construction ignores the provisions of section 277." It was held that the acknowledgment of a treasurer's deed before the county auditor on the 6th day of April, 1876, was a valid acknowledgment, under section 277. As section 277 authorizes the officers therein named to take acknowledgment of deeds affecting real estate, and deputy clerks are therein specified, we hold the acknowledgment of the instrument in question to be valid.

III.  Said section 2309 also provides that such instruments as that in question "shall be recorded in the recorder's office in the county where the person adopting resides, and shall be indexed with the name of the parents by adoption as grantor, and the child as grantee, in its original name, if stated in the instrument." This instrument was duly filed for record March 23, 1889, and was indexed under the letter B, as follows: "Bernard, Emma Sophia, adopted, 69,"—and under the letter H, as follows: "Hazelman, Emma Sophia, adoption of, 69." While this indexing is not strictly as required by the statute, in that it does not present the parties in the relation of grantor and grantee, it is such a compliance with the statute that prejudice to any person was impossible because of the slight variation. Section 2310 of the Code of 1873 provides that "upon the execution, acknowledgment, and filing for record of such instrument, the rights, duties, and relations" between the parent and child attach. Indexing is not essential to the validity of the instrument and the omission of the recorder to index exactly as provided will not render it invalid. The cases cited are not in point. In *Shearer v. Weaver,* 56 Iowa, at page 585, it is said, "Our statute having provided specifically the means whereby one sustaining no blood relation to an intestate may inherit his property, the rights of inheritance

must be acquired in that manner, and can be acquired in no other way." In that case the articles of adoption were not recorded during the lifetime of the person adopting, and were therefore held not to be valid. In *Long v. Hewitt,* 44 Iowa, 363, the instrument was not executed by the person intending to adopt. In *Tyler v. Reynolds,* 53 Iowa, 146, the instrument was not filed for record until after the death of the party making the adoption. In *Gill v. Sullivan,* 55 *Iowa,* 341, the instrument was almost entirely destroyed by accident, so that recording was impossible. In *McCollister v. Yard,* 90 Iowa, 622, the articles were not filed for record until after the child came of age, though in the lifetime of the adopting parent. It was held that as the articles only took effect upon filing for record, and as the child was not then a minor, the articles were not valid.

IV. This brings us to consider whether this legal adoption of the plaintiff has the effect of revoking the previously executed will of Mr. Bernard, the adopting father. The relations and rights of these persons being exclusively statutory, we must determine this question in the light of the statutes, as found in the Code of 1873, under which the transactions occurred:

"Sec. 2307. Any person competent to make a will is authorized in manner hereafter set forth, to adopt as his own the minor child of another, conferring thereby upon such child all the rights, privileges, and responsibilities which would pertain to the child if born to the person adopting in lawful wedlock."

"Sec. 2310. Upon the execution, acknowledgment, and filing for record of such instrument the rights, duties, and relations between the parent and child by adoption, shall, thereafter, in all respects, including the right of inheritance, be the same that exist by law between parent and child by lawful birth.

"Section 2311. *   *   * But no action of the court in the premises shall affect or diminish the acquired right

of inheritance on the part of the child, to the extent of such right in a natural child of lawful birth."

If deceased had left no will, there could be no question of plaintiff's right to share in his estate as his child, under section 2453. Plaintiff's contention is that her adoption by the deceased has the same effect upon his previously executed will as if she had been born to him in lawful wedlock at the time of her adoption. Defendants cite section 2329 of said Code, as follows: "Wills can be revoked in whole or in part, only by being canceled or destroyed by the act or direction of the testator with the intention of so revoking them, or by the execution of subsequent wills." They insist that wills cannot be otherwise revoked, and that, as this one was not so revoked, it is in full force. In *Alden v. Johnson,* 63 Iowa, 126, this court said: "The sole question in the case, namely, whether the birth of the daughter after the execution of the will, in law, operated to revoke it, is presented upon the pleadings in the case, which need not be particularly recited. This court has often ruled that the birth of a child of the testator operates as a revocation of a will before made,"— citing cases. This is conceded to be the law in this state, and it is clear therefrom that formerly the revocation of wills was not limited to the modes provided in said section 2329. Section 3276 of the present Code provides that "the subsequent birth of a legitimate child to the testator before his death will operate as a revocation." Under section 2335, Code 1873 (section 3279, present Code), the birth of posthumous children does not revoke the will, but the interests of heirs, devisees, and legatees are charged ratably in favor of the child.

V.   Having found under the Code of 1873 the subsequent birth of a legitimate child to the testator before his death operated as a revocation of his prior wills, we now inquire whether the adoption of a child has the same effect. This question is before this court for the first time, and, owing to differences in the statutes of this

and other states, we find but litle aid in the decisions of other courts. The language of our statutes is very broad, the adoption, conferring upon the adopted child, all the rights, privileges, and responsibilities, which would pertain to the child if born to the person adopting it in lawful wedlock." Code 1873, section 2307. As if to emphasize this language, it is further provided that "the rights, duties and relations between the parent and child by adoption, shall, thereafter [i. e. after the execution, acknowledgment, and filing of record of such instrument], in all respects, including the right of inheritance, be the same that exists by law between parent and child by lawful birth." Code 1897, section 2310. Plaintiff cites several cases wherein the right of adopted children to inherit from and through the adopting parent was passed upon, but in none of them is the question before us considered. In *Wagner v. Varner,* 50 Iowa, 532, it was held that the adopted child could inherit from his natural parents. In *Warren v. Prescott,* 84 Me. 483 (24 Atl. Rep. 948), it was held that an adopted child can take a legacy given to one of its adopting parents, and thus prevent the legacy from lapsing when the legatee dies before the testator. Other cases cited are equally foreign to the question under consideration. This question was directly considered in *Davis v. Fogle,* 124 Ind. 41 (23 N. E. Rep. 860). The court says: "The question presented for decision is, does the adoption of a child, under the statutes of this state, operate to revoke an antecedent will of the adopting father, he having made no provision in the will or otherwise for such adopted child?" The statute of the state provides that from and after adoption such child "shall be entitled to and receive all the rights and interest in the estate of such adopted father or mother, by descent, or otherwise, that such child would do if the natural heir of such adopted father or mother." It is said, "But we think the statute relating to the revocation of wills is decisive of the question involved in this case;" and it was held that as that statute did not provide that the adop-

tion of a child should operate as a revocation of a prior will, and as revocations can be only made as provided, the will was not revoked by the adoption of the child. We have seen that, under the Code of 1873, revocations of wills were not limited to the modes provided in section 2329. Therefore the *Case* of *Davis* is not authority for the same conclusion in this case. The same is true of *In re Gregory's Estate* (Sur.) 37 N. Y. Supp. 925. The statute under consideration in that case contained several exceptions to the child's right to inherit, while ours contains none. *In Re Comassi's Estate,* 107 Cal. 1 (40 Pac. Rep. 15), a married woman had executed her will, and thereafter, and after the death of her husband, remarried; and the question was whether her marriage had the effect of revoking her will, under a certain statute, and it was held that it did not. The will was contested by a child that had been adopted prior to its execution, and solely upon the claim that the marriage revoked it. In *Davis v. King,* 89 N. C. 441, the question was whether a petition and decree of court whereby Richard W. King adopted his illegitimate son were admissble in evidence to show a revocation of the will offered for probate. The court held that wills could only be revoked as provided by statute, and that as the transcript offered did not purport to be a testamentary paper, nor to contain revatory words, it was inadmissible. *In re Sunderland's Estate.* 60 Iowa, 732, the child was adopted by W. P. Sunderland and wife under a special act of the general assembly of Louisiana providing that the child shall inherit from the adopting parents, as if she were their legitimate child, without prejudice to forced heirs, if any there be." (Laws 1860, p. 131.) It was also provided that, should the child survive the parents and die without issue, then all the property she may have inherited from either of said parents should pass to the heirs of said parents. W. P. was the son of John Sunderland, and died before his father. The adopted child claimed that, as child of W. P. she was entitled to inherit his share

of his father's estate, under section 2454 of the Code of Iowa of 1873, which is as follows: "Granchildren. If any one of his children be dead, the heirs of such child shall inherit his share in accordance with the rules herein prescribed in the same manner as though such child had outlived his parents." This court, resting the case solely upon said special act, held that the adopted child had no right in the estate of John Sunderland. In *Sewall v. Roberts*, 115 Mass. 262, A. had in 1825 made a voluntary conveyance (without reserving any power of revocation) of personal property to an annuity company in trust to pay the income to him for life, and upon his death to be transfered to his administrator in trust for the special use and benefit of his children, and, in case he died without issue, then to his mother, if she survived him, and, if not, then to his or her heirs equally. In 1865 he adopted a child. "Held, also, that the adopted child took the remainder of the property as a 'child,' under the settlement, as one of the legal consequences and incidents of the natural relation of parents and children." It is manifest that these cases fall short of determining the question under consideration, and we are not referred to, nor do we find, any one that does. Our statute, in declaring the rights of adopted children, does not contain any exceptions, as do those to which our attention has been called, and it is difficult to conceive of language that would more clearly place them upon the same level in all respects with children of lawful birth. The reasons for the rule that subsequent birth of a legitimate child to the testator before his death operates as a revocation of his prior will apply with equal force to a subsequent adoption under a statute like ours, containing no exceptions or qualifications, and declaring that the rights, duties, and relations between parent and child by adoption shall "in all respects, including the right of inheritance, be the same that exist by law between parent and child by lawful birth." While these relations and rights are statutory, and may not be enlarged beyond the plain meaning of

the statute, that meaning should not be defeated by any strained construction. We conclude that it is the legislative intention to place adopted children upon the same level as children of lawful birth, in all respects, and therefore that the decree of the district court should be REVERSED.