CECILIA L. BOURNE, Appellant, *v.* MICHAEL V. DORNEY, as Trustee under the Last Will and Testament of CATHERINE ALEXANDER, Deceased, Respondent.

Second Department, June 21, 1918.

**Parent and child — adoption — will — rights of child adopted after making of will and not mentioned therein — Decedent Estate Law, section 26, construed — Domestic Relations Law, section 114, construed.**

Section 26 of the Decedent Estate Law, providing in substance that where a testator shall have a child born after the making of a will and shall die leaving such child unprovided for and unmentioned in the will the child will succeed to such part of the parent's estate as he would take if the parent died intestate, applies to a child legally adopted after the foster parent has made a will which neither mentions nor makes provision for said child.

An adopted child of a testator is by the present statute given a status of inheritance equivalent to that of a child born to the testator, with the exceptions prescribed in section 114 of the Domestic Relations Law.

In other words, the Statutes of Descent and Distribution strictly available to those of the blood inure to the benefit of an adopted child under the present statute of adoption.

PUTNAM and BLACKMAR, JJ., dissented, with opinion.

APPEAL by the plaintiff, Cecilia L. Bourne, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Richmond on the 20th day of February, 1918, dismissing her complaint upon the merits on the decision of the court after a trial at the Richmond Special Term.

*William H. Hamilton* [*Norman C. Conklin* with him on the brief], for the appellant.

*John G. Clark*, for the respondent.

THOMAS, J.:

The question is whether a child adopted by a testator subsequent to the making of his last will is in law equivalent to " a child born after the making of a last will," within section 26 of the Decedent Estate Law. The other conditions of the section are met by the present facts. The object of the section is to preserve to a child born of the testator the right of inheritance (using the word as covering both descent and distribution) unless the will specifies a gift to such child, or shows intention to give it nothing. But the initial condition of the protection of the inheritance is that the child shall be born to the testator. Hence the utmost letter of the section is not met in the present case. The next inquiry is, whether an adopted child is by statute given a status equivalent to that of a child born to the testator. When the testator adopted the appellant there were extinguished all other parental rights and duties, although the right to inherit from the natural parent continued (Dom. Rel. Law, § 114), and the child and foster parent came into the full " legal relation of parent and child." The statute (Dom. Rel. Law [Consol. Laws, chap. 14; Laws of 1909, chap. 19], § 114, as amd. by Laws of 1915, chap. 352, and Laws of 1916, chap. 453) provides:

" § 114. Effect of adoption. Thereafter the parents of the person adopted are relieved from all parental duties toward, and of all responsibility for, and have no rights over such child, or to his property by descent or succession. * * * His. rights of inheritance and succession from his natural parents remain unaffected by such adoption. The foster parent or parents and the person adopted sustain toward each other the legal relation of parent and child, and have all the rights and are subject to all the duties of that relation, including the right of inheritance from each other, except as the same is affected by the provisions in this section in relation to adoption by a stepfather or stepmother, and such right of inheritance extends to the heirs and next of kin of the person adopted, and such heirs and next of kin shall be the same as if he were the legitimate child of the person adopting, but as respects the passing and limitation over of real or personal property dependent under the provisions of any instrument

on the foster parent dying without heirs, the person adopted is not deemed the child of the foster parent so as to defeat the rights of remaindermen." (See, also, Dom. Rel. Law [Gen. Laws, chap. 48; Laws of 1896, chap. 272], § 64, as amd. by Laws of 1897, chap. 408.)

The learned counsel for the respondent presents the view that section 114 refers to the " personal and family relations," such as the use of the parent's name, the right to maintenance, education and support, the duties of respect and obedience. That would unduly diminish the force of the word " all." (*Kroff* v. *Amrhein,* 94 Ohio St. 282; 114 N. E. Rep. 267.) Section 114 disavows such limitation, for in its very words it declares that the relation, rights and duties, one or all, include the " right of inheritance." It is conclusive in the present discussion that the section states that the right of inheritance springs from the legal relation of parent and child, its rights and obligations, and that the section in appropriate words, save in the respects excepted, opens to the foster parent and adopted child the whole realm of the law that obtains where the relation arises from the birth in legal wedlock. The statute at one time (Laws of 1873, chap. 830, § 10) excluded the right of inheritance. In 1887 (Chap. 703), and subsequent to the will in question, but before the date of adoption, the statute was amended, among other things, by changing the word " excepting " to " including," indicating that before and after the amendment the section was so broad as to cover rights of property, and that in such regard as well as in all other respects the relation begot universal rights and obligations, unless exceptions were introduced into the statute. Indeed, by section 60 of the Domestic Relations Law of 1896, since amended and become section 110 of the present Domestic Relations Law (as amd. by Laws of 1915, chap. 352, and Laws of 1917, chap. 149), it was provided that nothing in regard to the " adopted child inheriting from the foster parent, applies to any will, devise or trust made or created before June twenty-fifth, eighteen hundred and seventy-three, or alters, changes or interferes with such will, devise or trust, and as to any such will, devise or trust, a child adopted before that date is not an heir so as to alter estates or trusts, or devises in wills so made or created." That, in connec-

tion with other provisions, means that, other than so excepted, the article providing for the child inheriting shall have its usual effect upon wills and gifts thereunder. But section 114 has the further provisions that the right of inheritance " extends to the heirs and next of kin of the person adopted, and such heirs and next to kin shall be the same as if he were the legitimate child of the person adopting.". So, as between them, the entire field of reciprocal rights and duties inures to the foster parent and adopted child. If the child die, his lands and goods inure to the foster parent — his only legal parent — subject to his ability to make disposition of them by will — an ability limited as to real property in this State if he be under the age of twenty-one years, in which case the foster parent would inherit. (Decedent Estate Law, §§ 10, 15, 81, 98.) What I would emphasize is the totality of the status with which the new parent and child are invested, and that too a status that in its nature is precisely that of a man with a child born to him. But it is said that the adopted child has the entire right of inheritance that belongs to the child born to the parent; that the parent can give to the exclusion of either. But is there not this defect in that statement, that if the appellant had been born to the testator her inheritance would have been unaffected by the will, while the appellant, adopted, by the will has been cut off from inheritance? In that case the adopted child has not the same right of inheritance as the born child. And yet the statute makes no distinction, but endows the adopted child with the fullest rights of devolution. There is then presented the case where a man adopts a child and, speaking through the statutes, says that the child may have all the rights that the born child could have and may inherit like such child, and yet has made a prior will excluding the adopted child from any inheritance. If that be the rule, the adopting parent exercises the right of adoption in fraud of the child, for he legally represents that the child may inherit, while he knows that he has cut off the inheritance, although it would not be effectual against a natural child. But if the statutes, read together, be construed to mean that the adopted child shall have the entire status of the born child, and that his exclusion from a will was not

intentional because his existence and relation to the testator were unseen and unknowable, then not only is the foster parent's power to disinherit preserved, but also the duties and rights that the statute imposes and confers are fulfilled. The statute is so wide in its conferment of the relation of fatherhood and sonhood that it carries with it the entirety of rights that go with the obligation. In decision the assimilation of the adopted child to a child of blood has been in the current of judicial thought, as in *Dodin* v. *Dodin* (16 App. Div. 42, 46), where the will provided that the remainder of the estate " descend and be distributed according to the laws of the State of New York;" *Sewall* v. *Roberts* (115 Mass. 262), where there was a trust for the use of a child of the settlor, and a subsequently adopted child took as one of the " legal consequences and incidents of the natural relation of parents and children;" *Von Beck* v. *Thomsen* (44 App. Div. 373), where a life insurance was payable to children, and where the opinion states: " Upon such an adoption the relation of parent and child is created to the same effect as though the child adopted had been born at the time of the adoption as a natural child of the adopting parents;" *Carpenter* v. *Buffalo General Electric Co.* (213 N. Y. 101, 108), where the effect of adoption is considered and it is said: " When the Legislature provided that the heirs at law and next of kin of the adopted child should be the same as if he were the legitimate child of the person adopting, the adopted child, in a legal sense, became the natural child of the adoptive parent. * * * It cannot be presumed that the Legislature intended to create an exception to that rule, where it had surrounded the relation of foster parent and child with all the safeguards, rights and privileges of the relation of parent and child by blood." The perfection of the relation of parent and child in case of adoption is appreciated in such and similar judicial expression. (*Matter of MacRae,* 189 N. Y. 147; *Matter of Cook,* 187 id. 253, 260, 261, where the opinion states: " Thus the statute gives to an adopted child the same legal relation to the foster parent as a child of his body, and that relation extends to the heirs and next of kin of the child by adoption the same as to those of a child by nature. The artificial relation is given the same effect as the actual relation,

so far as the right of succession is concerned, and the statutory grandchild and grandparent inherit from each other the same as if the relation had been created by nature. In other words, the Legislature has ordained that there shall be no difference in the right to inherit between a child by adoption and his heirs and next of kin and a child by nature and his heirs and next of kin, and the courts, as in duty bound, have obeyed the command.") Such cases did not involve the decision of the present question, but in them is the constant thought that as to the property interests the natural and adopted child are in equality, save as the case may fall within one of the exceptions stated in the statute. This leads to a consideration of decisions where the precise question was in issue, or in some way involved, and determined favorably to appellant's contention. They are *Flannigan* v. *Howard* (200 Ill. 396); *Hilpire* v. *Claude* (109 Ia. 159); *Glascott* v. *Bragg* (111 Wis. 605), to which approving reference was made in *Sandon* v. *Sandon* (123 id. 603); *Thomas* v. *Maloney* (142 Mo. App. 193), where it was decided that where the foster parent has forgotten the adopted child in his will, she will be accorded the right given in the will to a pretermitted heir. In each instance the statute of the State where the question arose had words not literally found in the statute of this State, but the language in its scope and meaning was not more comprehensive. In *Flannigan* v. *Howard* (*supra,* Ill.) the opinion states the statute as follows: "A child so adopted shall be deemed, for the purpose of inheritance by such child, and his descendants and husband or wife, and other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock." (See Ill. R. S. chap. 4, § 5.) In *Hilpire* v. *Claude* (*supra,* Iowa) the sections of the Iowa Code of 1873 are stated in the opinion, two of which are as follows: "Sec. 2307. Any person competent to make a will is authorized in manner hereafter set forth, to adopt as his own the minor child of another, conferring thereby upon such child all the rights, privileges, and responsibilities which would pertain to the child if born to the person adopting

in lawful wedlock." " Sec. 2310. Upon the execution, acknowledgment, and filing for record of such instrument the rights, duties, and relations between the parent and child by adoption, shall, thereafter, in all respects, including the right of inheritance, be the same that exist by law between parent and child by lawful birth." In *Glascott* v. *Bragg* (*supra*) the opinion quotes the statute of Wisconsin as follows: " A child so adopted shall be deemed, for the purposes of inheritance and succession by such child, custody of the person and right to obedience by such parents by adoption, and all other legal consequences and incidents of the natural relation of parents and children the same to all intents and purposes as if the child had been born in lawful wedlock of such parents by adoption." (Wis. Stats. 1898, § 4024.) The statutes of such States are more ample in language but not more significant. If a person adopt a child, he makes him his child for all purposes save as the statute may specially diminish the relation. Our Domestic Relations Law (§ 110) provides: " Adoption is the legal act whereby an adult takes a minor into the relation of child and thereby acquires the rights and incurs the responsibilities of parent in respect to such minor." In *Vidal* v. *Commagere* (13 La. Ann. 516) the court deemed the very act of adoption sufficient to make the child the child of the adoptive parents. In the opinion it is said: " We conclude, therefore, that, as by the common acceptation of the word adoption, the relationship of parent and child with all the consequences of that relationship is understood, as such was the legal meaning of the word under the former laws of Louisiana, and as such is its acceptation among civilians and those conversant with the sources of our laws, we cannot say that the Legislature used the word in a more restrained sense; in a sense not understood in common parlance, not given in any dictionary, and not known in any system of laws." But if a child is the parent's child in all highest and fullest rights and responsibility, as if he had been born to him, it follows that the child is entitled to have his father weigh his merit before he diverts from him the inheritance with which, upon adoption, he endows him. In reaching this conclusion I have not been unmindful of the force of the respondent's argument, or the decisions he has brought to it.

The salient thought is that section 26 of the Decedent Estate Law is in direct words made available to the testator's natural child. The statute so says. But if the statute relating to adoption makes a child adopted by the testator equivalent in rights and protection to one born to him, the respondent's argument loses its force. So the statutes of descent and distribution are strictly available to those of the blood, but the statutes of adoption cause them to inure to the adopted child. (*Fosburgh* v. *Rogers*, 114 Mo. 122; *Rowan's Estate*, 132 Penn. St. 299; *Atchison* v. *Atchison's Executors*, 89 Ky. 488.) So a will may make a limitation to a child or issue, and yet a statute may so characterize an adopted child as to make it correspond to such child or issue. (*Hartwell* v. *Tefft*, 19 R. I. 644.) Undoubtedly, as the respondent urges, the right of inheritance does not prevail against a valid gift by the ancestor; but a will falling under section 26 of the Decedent Estate Law is not valid as against children subsequently born and surviving the testator, and the question then becomes simply this, whether by force of other statutes an adopted child is in rights identified with a natural child. The respondent relies upon several decisions: *Russell* v. *Russell* (84 Ala. 48), where it was decided that an adopted child could not share with the child of the testator under the provisions of the will devising property to the testator's children, executed before adoption and not afterwards changed. The court considered that the statute declaring the adopted child capable of inheriting the estate of the adoptive parent was confined to cases of intestacy and property left undisposed of by will, in which there was a narrower construction of the statute than is justified by the words of our statute, and not in accord with usual decisions. *Davis* v. *Fogle* (124 Ind. 41) is to the effect that the adoption of a child under the statute does not operate to revoke an antecedent will of the adopting father, although he has made no provision by the will or otherwise for such adopted child. It is observable that under the statutes of Indiana the relation of the adopted child to its adoptive parent is not as complete as in this State, and the relation between the two would seem to be a somewhat imperfect one. The statute provides that " from and after the adoption of such child, it shall take the name in which it is adopted, and be entitled

to and receive all the rights and interest in the estate of such adopted father or mother, by descent or otherwise, that such child would do if the natural heir of such adopted father or mother." The statute also provides for the devolution of property inherited from the adoptive father or mother upon their heirs. (See Ind. R. S. 1881, § 825; Burns' Anno. Ind. Stat. [1914] § 870.) But the decision seems to be that the will prior to the adoption was not revoked, because that right inures only to legitimate issue of the testator, and that words cannot be interpolated in the statute to adapt it to an adopted child. The decision favors the respondent, but I would suggest that it is not necessary to interpolate words into the statute, but rather to decide that other statutes cause the adopted child to be regarded as the equivalent in right of the natural child. *Evans* v. *Evans* (186 S. W. Rep. 815) relates to the revocation of a will made prior to the adoption of a child. The statutes of Texas are stated, and the brief opinion is to the effect that the " statutes provide that an ' after-born ' child shall have the effect to revoke the previously executed will, and in no way suggest that the adoption of a child or heir after the execution of a will shall have the effect to revoke it." The decision quite agrees with that in Indiana. *Matter of Comassi* (107 Cal. 1) involved the statute of that State (Cal. Civ. Code, § 1300) which provides that " A will executed by an unmarried woman is revoked by her subsequent marriage, and is not revived by the death of her husband," and it was held that it does not apply to a will executed by a married woman who later and subsequent to the execution of the will entered into a second marriage. In the course of the opinion there is the statement that the " adoption of a stranger in blood is not the issue of the marriage, and cannot be treated as its equivalent." The expression is used in connection with the suggestion that the will is revoked by the marriage of the testatrix and by her having issue of such marriage, a consideration perhaps unnecessary for the disposition of the question in issue. *Bowdlear* v. *Bowdlear* (112 Mass. 184) decides that a child, who under the statutes has been adopted and taken the name of the testator, is not entitled to the same share in his estate as if he had died

intestate, when by will made before the adoption special provision was made for her by the name she then bore. It may be quite as well inferred as otherwise that, if special provision had not been made for her, the court would have interfered in her behalf. In *Goldstein* v. *Hammell* (236 Penn. St. 305) the will gave the estate to the widow and her daughter for life, or, if the latter died without issue, to his brother. The daughter did die without issue, and in an action by the brother to recover, the widow proposed that the adoption of a child had annulled the whole will, and the court decided otherwise. The act relating to after-born children was passed in 1833, while the adoption was under later acts.* The court considered that the act of 1855 did not affect the act of 1833, or, to use the words of the opinion: " There is nothing, therefore, in the Act of 1855 or its supplement of 1872 which in terms amends the fifteenth section of the Act of 1833 so as to make it apply to adopted children. * * * The Act of 1855 has not the effect to put an adopted child in all respects in the relation of a child in fact." In *Matter of Gregory* (15 Misc. Rep. 407), ARNOLD, S., favors the respondent's position in accordance with its authority and reasoning. However, in my judgment statutes are to be considered in their various parts, and the different members so construed as to modify duly each the other, and so in *ensemble* to constitute a reasonable and just body of law. If the study of the present question be pursued with such method, the only rational conclusion is that an adopted son receiving from the adoptive parent all the dues of sonship and imparting to the father all that would flow to him from a natural child, cannot be invited to a son's inheritance and right to inherit against a former will, and yet be disinherited by such will.

. The judgment should be reversed, with costs to the plaintiff, and the plaintiff have judgment for the relief demanded in the complaint, and her proposed findings of fact 9, 10, 11, 12, 13, 17 and 19, and all the proposed conclusions of law except the 6th are found. Findings of fact 11 and 13

---

* See Penn. Laws of 1832–33, p. 251, No. 128, § 15; Penn. Laws of 1855, p. 431, No. 456, § 7; Penn. Laws of 1872, p. 31, No. 20.— [REP.

and all the conclusions of law as found by the trial court are reversed.

JENKS, P. J., and MILLS, J., concurred; PUTNAM, J., read for affirmance, with whom BLACKMAR, J., concurred.

PUTNAM, J. (dissenting):

On February 15, 1886, Charles W. Alexander, of Richmond county, made a will leaving all his property to his wife. The deceased, however, on December 20, 1897, in conjunction with his wife, under the statutes of this State, had adopted his granddaughter, Cecilia, plaintiff herein, who had been born on June 28, 1892, and her sister, Lauretta (Lauretta predeceased the testator, intestate and without issue.)

The plaintiff, Cecilia, was unprovided for in the will, which remained unchanged until Mr. Alexander's death on January 8, 1907. His will was probated in the Surrogate's Court of Richmond county on February 18, 1907. The widow, Catherine, held under said will until her death, August 27, 1916, and the plaintiff lived there with her grandmother. Catherine left a will, executed September 27, 1915, in which she created a trust in favor of plaintiff, the trustee to pay her the income for life, less $4 monthly to the testatrix's sister. From the principal, $5,000 was to go to plaintiff at the age of thirty, and $5,000 additional at the age of thirty-five.

Plaintiff brought this action to quiet her title to this joint residence property in Middletown, Richmond county, claiming as sole heir at law of Charles W. Alexander, notwithstanding his prior will of 1886. The Special Term, however, found that by such adoption plaintiff " acquired no rights in the estate of said Charles W. Alexander, deceased, under section 26 of the Decedent Estate Law of the State of New York."

Appellant's contention is that in our Decedent Estate Law (Consol. Laws, chap. 13 [Laws of 1909, chap. 18], § 26) the term " shall have a child born," which comes from the Revised Statutes (Pt. 2, chap. 6, tit. 1, art. 3, § 49), where the conditions are " shall have a child born after the making of his will, either in his life-time or after his death " (2 R. S. [2d

ed.] 9, § 49), may be construed so as to be read, " or adopt a child." This could not have been within the purpose of the Legislature, because neither at the time of the Revised Statutes, nor in 1869, when the present provision was enacted (2 R. S. 65, § 49, as amd. by Laws of 1869, chap. 22), was such thing as legal adoption known in this State, and such statute had no reference to conditions created by later legislation. (*Cotheal* v. *Cotheal*, 40 N. Y. 405.) This statute for after-born children has been declared by GRAY, J., as " based upon the strong presumption of an oversight, or an unintentional neglect of the ‑ testator to provide for those who have a natural and moral claim to a provision for their support out of their father's property. It was not intended to contravene the policy of our law to give to every one, competent to make a will, the right absolutely to control the disposition of his estate." (*Tavshanjian* v. *Abbott*, 200 N. Y. 374, 378.)

Our adoption statute, as amended by Laws of 1887, chapter 703 (Dom. Rel. Law [Consol. Laws, chap. 14; Laws of 1909, chap. 19], § 114, as amd. by Laws of 1915, chap. 352, and Laws of 1916, chap. 453), declares its legal effects and consequences as to succession with peculiar care. It touches succession by intestacy only. The wording applicable here is: " The foster parent or parents and the person adopted sustain toward each other the legal relation of parent and child, and have all the rights and are subject to all the duties of that relation, including the right of inheritance from each other, except as the same is affected by the provisions in this section in relation to adoption by a stepfather or stepmother, and such right of inheritance extends to the heirs and next of kin of the person adopted, and such heirs and next of kin shall be the same as if he were the legitimate child of the person adopting." But such adoption is not to affect a limitation over of property under any instrument by which it passes on the foster parent dying without heirs. In that case " the person adopted is not deemed the child of the foster parent so as to defeat the rights of remaindermen."

It was held that our Collateral Inheritance Tax Law (Laws of 1885, chap. 483), giving exemption to " lineal descendants born in lawful wedlock " did not embrace an adopted child.

(*Matter of Miller*, 110 N. Y. 216.) Judge DANFORTH adverted to the argument that such adoption and maintenance brought this beneficiary within the reason and equity of this statute. "But," he said, "if that be so, it constitutes no reason for controlling its language, although it might seem that the Legislature would have provided for such a case had their attention been directed to it." (p. 222.) The same rule was laid down in *Commonwealth* v. *Nancrede* (32 Penn. St. 389).

Here are two matters, viz., adoption of persons, and revocation of wills, which are purely statutory; certainly this is true of wills of land. The terms and conditions of revocation are plainly laid down. (Decedent Estate Law, § 34.) The statute, and not a doctrine of implied revocation, now controls. (*Matter of Davis*, 105 App. Div. 221; affd., 182 N. Y. 468.) I cannot assent to enlarge the terms of such statute, and by our judge-made ruling put such an extension into the adoption statute or the Statute of Wills. Indeed, the sounder rule would be that such a statute that changes the general course of descents, and would ignore merit on account of blood, should be strictly construed. (*Upson* v. *Noble*, 35 Ohio St. 655, 656.)

The prevailing United States rule is thus stated: "The laws permitting the adoption of children confer on them simply the ordinary rights of inheritance, and do not affect the power of the adoptive parent to dispose of his property by will, even though the will was made prior to the adoption." (1 Cyc. 930.)

As already stated, the theory of constructive intestacy as to after-born issue is from the idea of repairing an oversight. In our system of testamentary freedom, the law recognizes no controlling duty to provide for any child whether natural or adopted. Certain western States, influenced by the continental idea of restricting testamentary power to a fixed proportion of the estate, have extended this view towards persons adopted. But this never was our law.

After-born children may come into being after the testator's death or when he may be no longer able to make a will. But in the case of formal adoption, the ceremonial itself reminds the foster parent of his new responsibilities. Furthermore, our present adoption statute allows the fiction

of the relation between a young foster parent and an elderly adoptee, since now the aged beneficiary assumes the relation of " child " to the junior foster parent. This is the Roman doctrine of adrogation.

It is safer to follow the Supreme Court of Pennsylvania, that " an adoption does not make the person adopted a child of the adopter and the act of assembly could not make him such. The person adopted only becomes a child and heir of the person adopting him as to rights of inheritance and the mutual duties and obligations imposed by law * * *. The Act of 1855 has not the effect to put an adopted child in all respects in the relation of a child in fact." (*Goldstein* v. *Hammell*, 236 Penn. St. 305, 309.)

The statute allowing natural children to take legacies that would otherwise lapse is not extended to adopted persons. (40 Cyc. 1938.) Also such adopted child has not the right to administer upon the estate. (*Smith's Estate*, 225 Penn. St. 630.)

This precise point, that adoption does not revoke a prior will, has been often decided. (*Davis* v. *Fogle*, 124 Ind. 41; *Davis* v. *King*, 89 N. C. 441; *Matter of Comassi*, 107 Cal. 1; *Russell* v. *Russell*, 84 Ala. 48.) In New York the profession have followed *Matter of Gregory* (15 Misc. Rep. 407).

The contrary decisions ignore a vital distinction. In this, and most States, adoption statutes refer solely to intestate succession, where, in the absence of any will, such adopted person may logically be included as an heir. Foster parents and those adopted gain reciprocal rights of inheritance. When the Legislature omits from such statement of the effects of adoption the topic of wills, including revoking thereof, how can we say that the foster child is a natural child so as to overturn the will?

As far as the wording of the adoption statutes go, the one adopted, if an adult, has, on his side, conferred upon the adopter rights to inherit from the one adopted. Would this revoke or modify a prior will of the adult person adopted — a result equally equitable, now that adoption extends to all ages regardless of any disparity!

If such effects are to follow as to wills, the Legislature should so provide. To rewrite this statute, in this manner,

is not for the court, where such ruling may unsettle titles and overturn accepted rules of property relied on for over thirty years. On the other hand, a change made by the Legislature can be guarded against retroactive harm, and go into effect with full notice to the public, so as not to disturb vested rights.

Hence I recommend to affirm.

BLACKMAR, J., concurred.

Judgment reversed, with costs to the plaintiff, and judgment directed for plaintiff for the relief demanded in the complaint, and her proposed findings of fact 9, 10, 11, 12, 13, 17 and 19, and all the proposed conclusions of law, except the 6th, are found. Findings of fact 11 and 13, and all the conclusions of law as found by the trial court, are reversed. Order to be settled before Mr. Justice THOMAS.